Parker, J.,
after a brief recapitulation of the facts in the cause, delivered the opinion of the Court as follows : —
From the foregoing facts, and the arguments thereon by the counsel, it appears that all the proceedings of the corporation relative to the assessment and sale were correct; so that if Marshall were, at the time thereof, a member of the corporation, the title to the demanded premises in Ellis could not be disputed.
[ * 276 ] * We are therefore necessarily brought to the question, indeed the only one in the case, whether Marshall, by-virtue of the act aforesaid, became a member of the said corporation, subject to its rules and regulations, and liable to be assessed for the purpose of building said street.
The counsel for the plaintiff have contended,
1st. That by virtue of the act itself, Marshall being named therein, he became, ipso facto, a member of the corporation, the legislature having competent power to compel him thereto.
2d. That should this not be the case, the foregoing facts contain sufficient evidence of his consent, tacit at least, to the passing of said act, and the insertion of his name therein.
The determination of the first point requires that we should ascertain the true nature and character of this legislative proceeding. If it were a public act, predicated upon a view to the general good, the question would be more .difficult. If it be a private act, obtained at the solicitation of individuals, for their private emolument, or for the improvement of their estates, it must be construed, as to its effect and operation, like a grant. We are all of opinion that this was a grant or charter to the individuals who prayed for it, and those who should associate with them; and all incorporations to make turnpikes, canals, and bridges, must be so considered. (a)
Can then one, whose name is, by mistake or misrepresentation, inserted in such an act, refuse the privileges it confers, and avoid the burdens it imposes? If he cannot, then the legislature may, at all times, press into the service of such corporations those whose lands may be wanted for such objects, whenever they may be prevailed on to insert the names of such persons by the intrigue or mistake of those more interested in the success of the object. No apprehension exists in the community that the legislature has such power. That the land of any person, over or through which a turnpike or canal may pass, may be taken for that purpose, if the legislature deem it proper, is not doubted. The constitution gives *257 power to do this, provided compensation is made. But it was never before known that they have power over the person, to make him a * member of a corporation, and subject him [ * 277 ] to taxation, nolens volens, for the promotion of a private enterprise.
That a man may refuse a grant, whether from the government or an individual, seems to be a principle too clear to require the support of authorities. That he may decline to improve his land, no one will doubt. Although the' legislature may wisely determine that a certain use of his property will be highly beneficial to him, he has a right to judge for himself on points of this nature. The fact therefore in the case, that Marshall is benefited equally with the other owners by the making of this street, is of no importance. In Bagg’s case (3) it seems to be agreed by the Court, that a patent procured by some persons of a corporation shall not bind the rest, unless they assent. And in Brownlow’s Reports, 100, there is this passage: “ It was said that inhabitants of a town cannot be incorporated without the consent of the major part of them, and an incorporation without their consent is void.”
In Comberbach, 316, Holt, speaking of a new charter made to the city of Norwich by Henry 4, and confirmed by Charles 2, says, the new charter had been void if the corporation had refused it; but when they accept it, and put it in execution, it is good.
If these principles were correct in England in times when prerog ative ran high, — and the crown or the Parliament could not force charters or patents upon the subject without his assent, — surely in this free country, where the legislature derives its power from the people, such authority cannot be contended for.
It being, then, the opinion of the Court that this act is of a nature to require the assent of Marshall, either express or implied, before it can operate upon him, it is necessary to inquire into the second point, viz., whether the facts agreed on in this case furnish evidence of such assent.
It is contended that the act itself, as it contains Marshall’s name, furnishes such evidence, since it must be presumed that *the legislature were satisfied on this point before they [ * 278 ] passed the act.
This argument would have great weight if its force were not impaired by the facts stated in this case. It appearing that Marshall did not sign the petition; that he did not, in word or writing, assent to it, or to the act founded upon it; that he did not attend before the committee; and that, in the only transaction in which he *258 noticed the corporation, he protested against its authority over him, — the presumption arising from his name being in the act is weakened, if not destroyed.
It is then said that, public notice having been given of the hearing intended by the committee, his silence is evidence of his tacit assent to the passage of the act. As we are bound to presume every thing in favor of the doings of the legislature, we should think this a strong, if not a conclusive argument, if the notice given had been such as necessarily to signify to Marshall that he was to be included in the act prayed for. But on perusing the petition, which probably was published in the papers, we find nothing in it from whicli he could infer that his property or rights were to be affected, in the manner contemplated by this act. He may be considered as notified that a street was intended to be built over his ground ; and all that he could infer from this was, that so much of his land as the street would pass over would be taken for this purpose, and that he would receive indemnity for it in the usual way ; and that any opposition to it would be unavailing. He certainly could never have understood that it was intended to make him a member of the corporation without his consent. There is, therefore, no evidence even of a tacit consent before the passing of the act; and his conduct, after it passed, amounts to a direct disavowal of all the doings of the corporation, as they respected him or his property.
Upon the whole, therefore, we are of opinion that the act under which the plaintiff sets up his title could not bind Marshall without his assent; that he, having uniformly, whenever opportunity occurred, signified his dissent, is not a member of the corporation it created, was not liable to their assessments, and therefore that the sale of his land was without authority of law, and is void. [ * 279 J * According to the agreement of the parties, therefore, the plaintiff must become nonsuit, and judgment be given for costs to the defendant.
It having been said in argument that the acts relative to fencing common fields, and the act providing for the appointment of com missioners of common sewers, are within the principle of this act, it is proper to observe that we do not consider this decision as involv ing principles which militate with the provisions oí those acts.
Those are public acts, promotive of general convenience, and operating equally upon all citizens whose property is intended to be secured or improved by them.
This is a private act, obtained at the solicitation of individuals, for their emolument or advantage.
The act relative to common fields, also, is predicated upoi. the *259 assent of all who are to be affected by it; and that which provides for the appointment of commissioners of sewers gives an eventual trial by jury of all questions arising under it. These circumstances so materially vary those laws from the act under consideration, that our decisions upon the latter can by no means be considered as questioning the validity of the former.
These observations are made to prevent any opinion prejudicial to the authority of those laws, from an apprehension that as, in the argument, they have been considered analogous to the one on which we have now determined, an unnecessary alarm respecting them may spread in the community. (a)

Plaintiff nonsuit.

 Sed vide Beekman vs. S. & S. Railroad Co. 3 Paige, 45.

 Roll’s Rep. 224.

 Hampshire vs. Franklin, 16 Mass. Rep. 76. — 1 Kent, Comm. 459, 2d ed. — 2 Dwarris on Stat. 635.