### SIGUA IRON CO. v. GREENE.

(Circuit Court of Appeals, Second Circuit. October 24, 1900.)

#### No. 101.

1 TRIAL—STATEMENTS BY COUNSEL TO JURY.

It is not error to permit counsel for a defendant to state to the jury that he was unable to put in evidence the books of the plaintiff corporation because the court had excluded them, merely for the purpose of preventing the jury from drawing an inference unfavorable to the defendant because of their absence, where no attempt is made to state the contents of the books, or to comment on their exclusion.

2. CORPORATIONS—STOCKHOLDERS—EVIDENCE OF RELATION.

The fact that a person's name appears on the books of a corporation as a stockholder is not sufficient evidence upon which to charge him as such, but, the relation of corporation and stockholder being contractual, the assent of both parties, either express or implied, must be shown.

Thomas, District Judge, dissenting on the facts.

In Error to the Circuit Court of the United States for the Southern District of New York.

William B. Hornblower, Joseph S. Clark, Howard A. Taylor, and Henry P. Driggs, for plaintiff in error.

Kellogg, Rose & Smith, L. Laflin Kellogg, and Alfred C. Pette, for defendant in error.

Before PECKHAM, Circuit Justice, and TOWNSEND and THOM-AS, District Judges.

TOWNSEND, District Judge. This action has been tried three times. On the first trial the jury rendered a verdict for the plaintiff, and the judgment thereon was reversed on appeal. 88 Fed. 203. On the second trial the court directed a verdict for the defendant, and the judgment thereon was reversed on appeal. 88 Fed. 207. This is an appeal from a judgment on the third trial, dismissing the complaint, and for costs, rendered on a verdict for defendant. It was assumed at the hearing that this court would follow the former decisions as to the questions disposed of on the former appeals, and would consider only the new contentions made on the third trial.

Plaintiff assigns 12 errors. Most of them have been passed upon on the former appeals, the reports of which contain a substantially complete statement of the facts. The transfer of stock into the name of the defendant was made on July 9, 1890. It has been held on former appeals that Exhibit CC did not, of itself, authorize the transfer of the stock; that the defendant did not necessarily, by the transfer, become a stockholder; that the appearance of the defendant's name upon the books of the company as a stockholder was not sufficient, without evidence of his authority or ratification; that being a member of the board of directors did not make him conclusively chargeable with notice of what appeared in the company's books; that the parol evidence, as between him and the company, was admissible to show that the agreement in Exhibit CC was in fact conditional.

The fourth point in plaintiff's brief is as follows: "The charge of the trial court as to the legal results flowing from the use of the words 'Sigua Syndicate' in both the agreements was error." This is not included among the errors assigned. We think there was no error of law, and that, taking the whole charge together, the jury were not misled.

The eighth and ninth assignments of error are not referred to in plaintiff's brief. We think the evidence was properly admitted.

The testimony referred to in the tenth assignment of error—that defendant never had any notice from the company, or any officer, asking for payment on account of the four hundred shares—was admissible on the question of interest, and as bearing on the question whether the company understood that defendant was the real owner of the stock.

The eleventh ground of error refers to the exclusion of evidence that Smith notified the twelve persons who were desirous to sell their stock that he had ceased his efforts to sell, and that about 36 per cent. had been disposed of. Plaintiff claims that it was material to show that there was not an oversubscription. This could have been shown, and in fact was shown, by direct evidence. That Smith notified them to that effect does not tend to prove the fact. The notice by the treasurer of the company to these stockholders was not evidence against the defendant.

The twelfth ground of error is that the court permitted defendant's counsel to state to the jury that he was unable to put in evidence the books of the company, because the court had excluded them. It is not said that he attempted to state the contents of the books, or commented upon their exclusion. It was permissible to remind the jury that no inference could be drawn adverse to the defendant by reason of their absence.

The eighth assignment of error, and the only one of any importance not disposed of in the former opinions, is that the court refused to charge the jury that the letter of July 8, 1890, was sufficient authority for the transfer of the stock. This letter was as follows:

"George F. Baker, Treasurer, Philadelphia—Dear Sir: Inclosed please find my check for $3,000 in payment of assessment on 600 shares of stock. The other 400 shares subscribed by me has been taken by friends whom I may not see before going away, but as soon as I return will see them, and send you the names.

"Very respectfully, B. D. Greene."

Taken in connection with defendant's prior correspondence with Smith, saying that he had placed the shares, but desired to delay sending the names, and the other evidence as to the conditional character of the subscription, this letter was fairly open to the interpretation of a request to plaintiff not to take any further action in regard to the subscription on behalf of defendant's friends until defendant could see them, and should send their names to him; and was not an authority for the transfer of the stock to defendant. If defendant's testimony is believed, said letter should clearly have such construction.

The substantial question is whether, on this trial, the court correctly stated the law as to defendant's status. In view of the former opinions and of the decision of this court in Carey v. Williams, 79 Fed. 906, and the decision of the New York court of appeals in Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649, 31 N. E. 344, it is difficult to see how the court could have taken any other course. In the opinion on the last appeal of this case, the court said:

"A person cannot be constituted a shareholder in a corporation by a transfer of shares without his consent. The same proposition was enunciated by this court in Carey v. Williams, 25 C. C. A. 227, 79 Fed. 906, in these terms: 'The relation of corporation and stockholder is a contractual one, and can only be created with the consent, express or implied, of both parties.' * * * The important fact is that assent by the newcomer is an essential prerequisite. We do not understand that there is any contention here that a man may be made a stockholder by the mere unauthorized entry of his name upon the books without his knowledge or consent; or that he may, without such knowledge or consent, be made a stockholder, even by act of the legislature. It is contended, however, that when a person's name appears on the books as a stockholder, no matter how it got there, such entry is prima facie proof that he is a stockholder, and the burden is on him to disprove it. This proposition was discussed and decided contrary to the contention of the plaintiff in error by this court in Carey v. Williams, 25 C. C. A. 227, 79 Fed. 906."

On this trial, the court, in its charge to the jury, followed the foregoing statement of the law in Carey v. Williams. That case also

disposes of plaintiff's contention that a verdict should have been directed on the entries in the plaintiff's stock books. Judge Wallace, speaking for the court, says:.

"It is not enough that he appears to be a stockholder upon the books, and when this occurs without his sanction he incurs no liability as such."

Altogether, we think the case was properly tried, and that the evidence justified the verdict.

THOMAS, District Judge (dissenting). The question is whether the defendant is liable for the sum unpaid on certain stock standing in his name on the books of the company. His defense is that he was not the owner of the stock, and that it was transferred without authority to his name. An initial fact is that the stock was transferred on the books of the company to the defendant. If the transfer was made of right, it continued of right. It was made of right if the defendant owned the stock and was bound to accept a proffered delivery of it. There is a written instrument showing an agreement to purchase it. If this agreement was complete in itself, the stock was the property of the defendant, and was transferred lawfully to him. But he was permitted to show that the agreement to purchase was qualified by an oral agreement that he should take the stock only upon his finding an opportunity to place it. Even so, the condition was fulfilled, for he notified by letter both the vendor and the company that he had placed the stock. Such notice, for present purposes, discharged the condition and perfected the purchase. Thereafter the stock was the property of the defendant. It was the privilege and duty of the vendor to deliver it, and thenceforth it was for the benefit or at the peril of the defendant, and it was the duty of the defendant to meet calls and assessments made upon it. The right to deliver thus accrued to the seller, and the defendant's obligation to accept enabled the vendor to transfer the stock to the purchaser on the books of the company. He might exercise this power to detach himself from responsibility attending the future of the stock and to attach any possible liability to the true owner. Thus the defendant's ownership was conjoined to his just and authorized enrollment as a stockholder, and there at once arose his obligation to respond in actions like the present, and no subsequent event has diminished that liability. When a contract of sale is consummated, the vendor, in the absence of modifying stipulations, may deliver the subject of the sale, and impose the burden of future consequences upon the vendor. That is the present case. These views should lead to the reversal of the judgment.